**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| Lorraine Cappello and Jeffrey O'Barski, on behalf of themselves and all others similarly situated, | Civil Action No.: 3:16-CV-290 |
| Plaintiffs, | |
| vs. | |
| Franciscan Alliance, Inc., Franciscan Alliance Pension and Benefits Committee, and John Does 1-20, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Lorraine Cappello and Jeffrey O'Barski, by and through their attorneys, on behalf of themselves and all others similarly situated, based on personal knowledge with respect to their own circumstances, and based upon information and belief pursuant to the investigation of their counsel as to all other allegations, allege the following.

### INTRODUCTION

1.       This is a class action against Defendants Franciscan Alliance, Inc. and Affiliates ("Franciscan Alliance" or the "Company"),[1] the Franciscan Alliance Pension and Benefits Committee (the "Committee"),[2] and John Does 1-20 (the "Committee members") concerning the Franciscan Alliance Pension Security Plan (the "Plan").[3]

---

[1] As discussed below, the Company was formerly known as the Sisters of St. Francis Health Services, Inc., but the Company changed its name to Franciscan Alliance, Inc. in November 2010.

[2] And/or any other committee with responsibility for managing/administering the Plan (defined below).

[3] The Plan was formerly known as Sisters of St. Francis Health Services, Inc. Pension Security Plan.

2.     As of December 31, 2013, the Plan was underfunded by $115.956 million.  *See Franciscan Alliance, Inc. and Affiliates Consolidated Financial Statements December 31, 2014 and 2013 ("2014 Consolidated Financial Statements")*, at 29.

3.     By year end 2014, the Plan's underfunded status tripled such that as of December 31, 2014, the Plan was under funded by $378.269 million.  *See id*.

4.     Defendants excuse the severe underfunding on the grounds that the Plan is a "church plan" and therefore is exempt from the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

5.     To the contrary, as described herein, the Plan does not meet ERISA's requirements for the "church plan" exemption because it was not "established," and is not "maintained" by a church.  Rather, the Plan was established and is maintained by Franciscan Alliance, which is a business – not a church or a convention or association of churches.

6.     Consequently, the Plan is governed by all of the funding, fiduciary, and notice requirements of ERISA.  This action seeks to require Defendants to comply with all of those requirements, and to pay damages and penalties as a result of their past failures to do so.

**JURISDICTION AND VENUE**

7.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

8.     This court has personal jurisdiction over Defendants because they are headquartered and transact business in, or reside in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.

9.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiffs

10.     Plaintiff Lorraine Cappello is a citizen and resident of Lynwood, Illinois.  Plaintiff Cappello was employed by the Company from November 1989 until September 2008 at the Franciscan St. James Health – Olympia Fields hospital during which time she worked as a switchboard operator for approximately seven years and thereafter in the Central Scheduling/Admitting department until September 2008.  Plaintiff Cappello is a current participant in the Plan

11.     Plaintiff Jeffrey O'Barski is a citizen and resident of Cedar Lake, Indiana. Plaintiff O'Barski was employed by the Company from July 1992 until January 2009 at the Franciscan St. Anthony Health – Crown Point hospital during which time he worked initially as a Dish Room Attendant, and thereafter in several positions before becoming a cook in 2005 until January 2009.  Plaintiff O'Barski is a current participant in the Plan.

### Defendants

12.     Defendant Franciscan Alliance is a 501(c)(3) non-profit corporation organized under the laws of Indiana.  *See* 2014 Consolidated Financial Statements, at 6.  Defendant Franciscan Alliance is headquartered in Mishawaka, Indiana, 46544.

3

13.     The Committee is an unincorporated association, which, upon information and belief, is the Plan Administrator and/or named fiduciary.

14.     John Does 1-20 are the individual members of the Committee and members of any other committee(s) which administer the Plan.   The identity of the members of the Committee, and any of the other committee(s) which was or were responsible for carrying out the provisions of the Plan, is currently not known.   Upon information and belief, John Does 1-20 are senior executive officers of the Company who knew or should have known the facts alleged herein.   The Committees and John Does 1-20 are hereafter collectively referred to as the "Committee Defendants."

## CLASS ACTION ALLEGATIONS

15.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the class (the "Class") defined as follows:

> All participants in and beneficiaries of the Franciscan Alliance Pension Security Plan (the "Plan").   Excluded from the Class are Defendants and any individuals who are subsequently to be determined to be fiduciaries of the Plan.

16.     The members of the Class are so numerous that joinder of all members is impractical.   Upon information and belief, the Class includes thousands of persons.

17.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

18.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.   Common legal and factual questions include, but are not limited to:

      A.      Whether the Plan is covered by ERISA;

      B.      Whether the Plan Administrator failed to comply with ERISA's reporting and disclosure provisions;

      C.      Whether the Defendants failed to fund the Plan and establish a policy to fund the Plan in compliance with ERISA; and

      D.      Whether Defendants breached their fiduciary duties in failing to comply with the provisions of ERISA set forth above.

19.      Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation.  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action.

20.      This action may be properly certified under either subsection of Rule 23(b)(1).  Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.   Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

21.      In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

22.     In the alternative, certification under Rule 23(b)(3) is also appropriate.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy within the meaning of Rule 23(b) and in consideration of the matters set forth in Rule 23(b)(3)(A)-(D).  Because of the amount of the individual Class members' claims relative to the complexity of the litigation and the financial resources of the Defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of herein. The maintenance of separate actions would place a substantial and unnecessary burden on the courts, and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.  Absent a class action, Class members will continue to suffer damages, and Defendants' misconduct will proceed without remedy.

**SUBSTANTIVE ALLEGATIONS**

**A.     Defendant Franciscan Alliance's Business**

23.     Franciscan Alliance is a not-for-profit healthcare conglomerate serving the needs of communities in Indiana, Illinois, and Michigan.     *See*: http://www.franciscanalliance.org/about/pages/default.aspx.     *See also* 2014 Consolidated Financial Statements, at 6.

24.     The Company includes 13 hospitals, various accountable care organizations, physician hospital managed care networks, a nonprofit foundation, a consolidated information technology services division, a construction company and a captive insurance company.  *See:* http://www.franciscanalliance.org/about/pages/default.aspx.     *See also* 2014 Consolidated Financial Statements, at 6.

25.     The Company's hospitals include:

- Franciscan St. Anthony Health – Crown Point, Crown Point, Indiana

- Franciscan St. Anthony Health – Michigan City, Michigan City, Indiana

- Franciscan St. Elizabeth Health – Lafayette Central, Lafayette, Indiana

- Franciscan St. Elizabeth Health – Lafayette East, Lafayette, Indiana

- Franciscan St. Elizabeth Health – Crawfordsville, Crawfordsville, Indiana

- Franciscan St. Francis Health – Carmel, Carmel, Indiana

- Franciscan St. Francis Health – Indianapolis, Indianapolis, Indiana

- Franciscan St. Francis Health – Mooresville, Mooresville, Indiana

- Franciscan St. James Health – Chicago Heights, Chicago Heights, Illinois

- Franciscan St. James Health – Olympia Fields, Olympia Fields, Illinois

- Franciscan St. Margaret Health – Dyer, Dyer, Indiana

- Franciscan St. Margaret Health – Hammond, Hammond, Indiana

- Franciscan Healthcare – Munster, Munster, Indiana

*See* http://www.franciscanalliance.org/hospitals/pages/default.aspx.

26.     The Company has more than 18,000 employees in three states to serve its patients.   *See*  http://www.franciscanalliance.org/hospitals/crownpoint/about/pages/mission-and-ministry.aspx.

27.     The Company is not, and does not claim to be a church.  In fact, in the 2014 Consolidated Financial Statements, the Company notes that it is, "dedicated to providing comprehensive ***health care services***, including emergency, medical, surgical, behavioral, rehabilitative, and other health services in inpatient and outpatient settings; home health care services; and primary and specialty physician services to communities within four geographic

7

regions in Indiana and Illinois." *See* 2014 Consolidated Financial Statements, at 6 (emphasis added).

28.     Prior to 2010, Franciscan Alliance was known as St. Francis Health Services but, the Company adopted a new name when they, "recognized the evolving changes in the health care landscape and the need to reinforce the shared capabilities across our hospitals and other health care facilities." *See* http://www.franciscanalliance.org/about/pages/history.aspx.

29.     That Franciscan Alliance is primarily focused on healthcare is perhaps best summarized by the Company's own statement regarding its name change to Franciscan Alliance, "We adopted a new name – Franciscan Alliance – to strengthen our presence **as a large, comprehensive health care system**." *Id*. (emphasis added).

30.     As a result of its business – to provide health care and related services – the Company recorded $2.425 billion in net patient service revenue for the year ended December 31, 2014, an increase from the $2.321 billion recorded the previous year.  *See* 2014 Consolidated Financial Statements, at 3.

31.     The vast majority of that revenue was received from Medicare, Medicaid, and "commercial insurance carriers, health maintenance organizations, and preferred provider organizations," sources which only pay for the provision of health care services. *See id.* at 18.

32.     Moreover, the 2014 Consolidated Financial Statements include warnings that the Company's net patient service revenue was subject to the "[l]aws and regulations governing the Medicare and Medicaid programs" and, "[a]s a result, there is at least a reasonable possibility that recorded estimates may change in the near term." *Id*. at 19.

33.     In order to fund its healthcare business, the Company has issued over $1 billion in bonds through the Indiana Financial Authority, including $552.545 million in Tax Exempt

8

Hospital and Health System Revenue and Refunding Bonds. *See id.* at 25. These are sources of revenue unavailable to churches.

34.     Despite its status as an ERISA plan, the Company has invoked Church Plan status to evade ERISA's protections to which its employees are entitled. The Company's failure to treat the Plan as an ERISA plan puts the Plan's participants at risk of receiving pension payouts drastically lower than those proposed, and deprives Plan participants of material information as alleged below.

35.     Moreover, by avoiding ERISA's requirements, the Company obtains a competitive advantage over the other healthcare entities that comply with ERISA.

**B.      The Plan**

**(1)      Franciscan Alliance Pension Security Plan Overview**

36.     The Plan was established and is maintained by the Company to provide retirement income to employees. Thus, the Plan was not established and is not maintained by a church or convention or association of churches.

37.     As noted in the 2014 Consolidated Financial Statements, "[p]rior to 2014, [Franciscan Alliance] had various retirement programs due to acquisitions over the years," but that effective January 1, 2014, all employees "will be covered by one comprehensive retirement program." *See* 2014 Consolidated Financial Statements, at 28.

38.     The Company's 2014 Consolidated Financial Statements note that "[Franciscan Alliance, Inc. and Affiliates] has a qualified noncontributory defined benefit pension plan [the Plan] covering all eligible employees of certain of the Corporation's entities." 2014 Consolidated Financial Statements, at 28. "The plan provides defined benefits based on years of service and final average salary." *Id.*

9

39.     Similarly, the Company's website states:

Employees are eligible to participate in the Franciscan Alliance Pension Plan (defined benefit plan) after one year of service with a minimum of 1,000 hours and attainment of age 21. Employees are fully vested after five years.  This plan is paid totally by Franciscan Alliance, with no employee contributions required.

*See* http://www.franciscanalliance.org/careers/why-work-for-us/pages/benefits.aspx.

40.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

41.     The Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

42.     Upon information and belief, at all relevant times, the Committee Defendants have been the administrators of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  They have also been fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because they have exercised authority or control respecting management or disposition of Plan assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan.

43.     The Company is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has exercised authority or control respecting management or disposition of Plan assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

44.     In particular, the Company, acting through its Board of Trustees, officers, and employees, is responsible for all of the acts alleged herein.

45.     Additionally, the Company has also been a party-in-interest under ERISA § 3(14), 29 U.S.C. § 1002(14), both because it is a fiduciary and because it is an employer whose employees are covered by the Plan.

**(2)     The Franciscan Alliance Pension Security Plan is not a "Church Plan" under ERISA**

46.     In its 2014 Consolidated Financial Statements the Company declares "[b]ecause the noncontributory defined benefit pension plan has church plan status as defined in the Employee Retirement Income Security Act of 1974 ('ERISA'), funding in accordance with ERISA is not required."  2014 Consolidated Financial Statements, at 28.

47.     Despite this claim, the Plan is not an ERISA "Church Plan."

48.     As alleged above, several factors demonstrate that Franciscan Alliance is not a church or conventions or association of churches.  *See* ¶¶ 23-35.

49.     Under Section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan must be both *established* and *maintained* by a *church* or by a convention or association of churches to qualify for the church plan exception.

50.     The Plan was *established* by the Company or its predecessors, not by a church or convention or association of churches.

51.     The Plan is *maintained* by the Company, not by a church or convention or association of churches.

52.     Additionally, Section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), provides that a plan maintained by a church or a convention or association of churches includes a plan

> *maintained* by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

53.     The principal purpose of Franciscan Alliance is to provide healthcare services, not to operate a pension system.

11

54.     Since the Plan is maintained by a healthcare company, the Plan is **not** maintained by "an organization … the principal purpose of which is the administration or funding of a plan or program for the provision of retirement benefits…."  11 U.S.C. § 1002 (33)(C)(i).

55.     Moreover, the Plan is not maintained for employees of any church or convention or association of churches; it is maintained for employees of the Company **– a hospital system**.

C.     **Defendants' Breaches of Fiduciary Duties**

      (1)     **Defendants Breached their Fiduciary Duty to Ensure the Plan is Fully Funded**

56.     Under ERISA, the Plan must have an annual actuarial report addressing the Plan's funding needs.

57.     Defendants are further required to fund the Plan each year according to a funding plan that meets the funding standards of ERISA and is based on reasonable actuarial assumptions.  *See* ERISA §§ 302, 303, 29 U.S.C. §§ 1083, 1083.

58.     Defendants are responsible for setting the funding requirements and the funding policy for the Plan.

59.     Defendants failed to set a funding policy that will adequately fund the anticipated obligations of the Plan or fund the Plan.

60.     As of December 31, 2014, the Plan was $378.269 million underfunded, a substantially worse position than it had been just a year earlier, when it ended calendar year 2013 underfunded by $115.956 million.  *See* 2014 Consolidated Financial Statements, at 29.

      (2)     **Defendants Breached their Fiduciary Duty to Avoid Conflicts of Interest**

61.     By continuing to set an inadequate funding policy which has resulted in the Plan becoming underfunded by over three hundred and seventy five million dollars, Defendants have

12

acted at all times in the interest of the Company, and have not acted solely in the interests of the Plan participants as is required of a fiduciary under ERISA.

62.     Franciscan Alliance benefits from Defendants' decision not to fund the Plan adequately and Defendants have a conflict of interest that prevents them from carrying out their fiduciary duties in a manner consistent with ERISA.

63.     Despite this conflict of interest, Franciscan Alliance has failed to appoint fiduciaries who could carry out their duties to protect the Plan's participants in a manner consistent with ERISA or to take other appropriate steps to address the conflict.

64.     As a result of this conflict of interest, and in light of Defendants' repeated and ongoing breaches of fiduciary duties, the Court should appoint an independent fiduciary who can protect the interests of Plan participants and carry out his or her duties consistent with ERISA.

**FIRST CLAIM FOR RELIEF**
**Declaratory and Equitable Relief**
**(Declaratory Judgement Act and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

65.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

66.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

67.     Pursuant to this provision, 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Plan is not a "church plan" within the

meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus subject to the provisions of Title I and Title IV of ERISA.

68.     Plaintiffs further seek orders directing all Defendants to bring the Plan into compliance with ERISA, including the reporting and funding requirements of ERISA, 29 U.S.C. §§ 1021, 1023, 1082, 1102, and 1104, and by remedying the additional violations set forth below.

69.     Additionally, Plaintiffs seek an order that Franciscan Alliance make all contributions to the Plan as necessary to remedy the Plan's funding shortfall.

**SECOND CLAIM FOR RELIEF**
**Violation of Reporting and Disclosure Provisions**
**(ERISA §§ 101-104, 502(a)(1)(A), (a)(3), 29 U.S.C. §§ 1021-1024, 1132(a)(1)(A), (a)(3))**

70.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

71.     § 502(a)(1)(A), 29 U.S.C. 1132(a)(1)(A), permits a plan participant to bring a suit for penalties when a defendant violates the recordkeeping obligations set forth in ERISA.

72.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

A.      **Annual Reports**

73.     Under ERISA § 103, 29 U.S.C. § 1023, employee benefit plans are required to file an annual report with the Secretary of Labor.  This report, submitted via Form 5500, must include certain specified information about the plan's finances, participants, and administration.

74.     Defendants failed to file an annual report concerning the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500 and associated

schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

75.     Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or file a Form 5500 and associated schedules and attachments.

### B.     Notification of Failure to Meet Minimum Funding Standards

76.     Under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), employers maintaining employee benefit plans are required to issue a notice to beneficiaries and participants whenever the plan fails to make a required installment or other payment required to meet the minimum funding standards under ERISA.

77.     Franciscan Alliance has failed to furnish the Plaintiffs or any member of the Class with a Notice with respect to the Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Franciscan Alliance failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082.

### C.     Funding Notices

78.     Under ERISA § 101(f), 29 U.S.C. § 1021(f), administrators of defined benefit plans are required to provide annual plan funding notices to all participants and beneficiaries of such defined benefit plans.

79.     At no time has the Committee furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

80.     As the Administrator of the Plan, the Committee has violated ERISA § 101(f), 29 U.S.C. § 1021(f), by failing to provide each participant and beneficiary of the Plan with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f), and as such may be required

by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that the Committee has failed to provide Plaintiffs and each Class member with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f).

**THIRD CLAIM FOR RELIEF**
**Failure to Provide Minimum Funding**
**(ERISA §§ 302 and 502(a)(3), 29 U.S.C. §§ 1082, 1132(a)(3))**

81.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

82.     ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

83.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

84.     As the employer maintaining the plan, Franciscan Alliance was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with ERISA's requirements.

85.     Franciscan Alliance has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

86.     By failing to make the required contributions to the Plan, Franciscan Alliance has violated ERISA § 302, 29 U.S.C. § 1082.

87.     As a result of the failure of Franciscan Alliance to fund the Plan in accordance with ERISA's minimum funding standards, Plaintiffs face substantial risk of the pension being lost or severely reduced.

**FOURTH CLAIM FOR RELIEF**
**Failure to Establish the Plan Pursuant to a Written Instrument Under ERISA**
**(ERISA §§ 402, 502(a)(3), 29 U.S.C. §§ 1102, 1132(a)(2))**

88.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

89.     ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will, among other things, "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

90.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

91.     The Plan has not been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

92.     As Franciscan Alliance has been responsible for maintaining the Plan and has amendment power over the Plan, it violated § 402, 29 U.S.C. § 1102, by failing to promulgate written instruments in compliance with these sections to govern the Plan operation and administration.

## FIFTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (ERISA §§ 404, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1109, 1132(a)(2))

93.      Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

94.      ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries, and defraying reasonable expenses of administering the plan, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

95.      ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits the fiduciary made through the use of the plan's assets.   ERISA § 409 further privies that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

96.      ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

97.      As a fiduciary of the Plan, Defendants had the duty to comply with and enforce the provisions of ERISA alleged above.

98.      Defendants have not complied with and/or enforced any of the provisions of ERISA set forth above with respect to the Plan.

99.     By failing to enforce the provisions of ERISA set forth above, Defendants have breached their fiduciary duties.

100.    The failure of Defendants to create and enforce adequate funding policies for the Plan, and properly fund the Plan, has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and this failure has profited Franciscan Alliance by providing it the use for its general business purposes of money that it should have paid to the Plan.

101.    Plaintiffs are entitled to recover those losses on behalf of the Plan.

## JURY DEMAND

102.    Plaintiffs demand a jury.

## PRAYER FOR RELIEF

103.    WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.      Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.      Declaring that the Plan is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33);

C.      Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, requiring Defendants to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Title I of ERISA;

D.    Requiring Defendants to make the Plan whole for all contributions that should have been made pursuant to ERISA funding standards, and for interest and investment income on such contributions, and requiring Defendants to disgorge any profits accumulated as a result of their fiduciary breaches;

E.    Granting a preliminary and permanent injunction removing Defendants as Plan fiduciaries, and appointing one or more independent fiduciaries to hold the Plan assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA;

F.    Requiring the Franciscan Alliance Pension Security Plan to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to fund the Plan in accordance with ERISA's requirements;

G.    Requiring Franciscan Alliance to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member with a Funding Notice;

H.    Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Plan;

I.    Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper, and such appropriate equitable relief as the Court may order, including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy; and

J.    Awarding to Plaintiffs' counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

Dated:  May 12, 2016


## JURY DEMAND

Plaintiffs, by counsel, hereby demand a trial by jury on all issues for which it is available.


/s/ Kevin E. Warren
Kevin E. Warren


Respectfully submitted,

SOPKO, NUSSBAUM, INABNIT & KACZMAREK


By: /s/ Kevin E. Warren
Kevin E. Warren, #26638-64
5th Floor - Plaza Building
210 South Michigan Street
South Bend, Indiana 46601
Telephone: (574) 234-3000
Facsimile: (574) 234-4220
Kevinw@sni-law.com
Counsel for Plaintiffs

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko
(*pro hac vice* motion to be filed)
Mark K. Gyandoh
(*pro hac vice* motion to be filed)
Julie Siebert-Johnson
(*pro hac vice* motion to be filed)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email:  eciolko@ktmc.com
Email:  mgyandoh@ktmc.com
Email:  jsjohnson@ktmc.com

**IZARD NOBEL LLP**
Robert A. Izard
(*pro hac vice* motion to be filed)
Mark P. Kindall
(*pro hac vice* motion to be filed)
29 South Main Street
Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email:  rizard@izardnobel.com
Email:  mkindall@izardnobel.com

***Counsel for Plaintiffs***