**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| LORAINE CAPPELLO, *et al*. on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FRANCISCAN ALLIANCE, INC., *et al.*, <br><br> Defendants. | ) ) ) ) ) ) CAUSE NO. 3:16-CV-290-TLS-MGG ) ) ) ) ) |

**OPINION AND ORDER**

Pending and ripe before the Court is the Motion to Appoint Interim Lead Counsel filed by Plaintiffs Jean L. Jewett, Lenore Owens, and Lori Buksar (collectively "the *Jewett* Plaintiffs") on September 16, 2016. [DE 65]. Also before the Court is the Motion for Entry of Pretrial Order No. 1 Appointment Interim Class Counsel filed by Plaintiffs Lorraine Cappello and Jeffrey O'Barski (collectively "the *Cappello* Plainitiffs") on August 9, 2016.[1] [DE 26]. Counsel for each set of Plaintiffs seek appointment as Interim Lead Class Counsel for the entire putative class in this consolidated ERISA "church plan" action against Defendant Franciscan Alliance, Inc., *et al.* The Court then heard arguments from all parties on the competing requests for appointment at a hearing on February 24, 2017.[2]

---

[1] The *Cappello* Plaintiffs' instant motion to appoint counsel was technically resolved through an order issued by this Court on September 8, 2016. [DE 41]. However, at a motion hearing on February 24, 2017, this Court granted the *Jewett* Plaintiffs' motion to reconsider its September 2016 appointment order. [DE 104]. Therefore, the *Cappello* Plaintiffs' motion remains under consideration in connection with the *Jewett* Plaintiffs' instant motion.

[2] At the hearing on February 24, 2017, the Court also found the *Jewett* Plaintiffs' motion for a Rule 16(b) Preliminary Pretrial Conference premature and deemed it moot [DE 104]; granted Defendants' oral motion to stay all proceedings pending decisions in three relevant cases now before the United States Supreme Court [DE 105]; and took under advisement Plaintiffs' instant motions for appointment of interim lead class counsel addressed below [DE 104].

## I. RELEVANT BACKGROUND

This consolidated action[3] stems from allegations that Defendant, Franciscan Alliance Inc., *et al.* improperly claimed the "church plan" exemption from the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs allege that in so doing, Franciscan Alliance has avoided providing protections to its employees and pension plan participants. More specifically, Plaintiffs contend that Franciscan Alliance has failed to fund their pensions in compliance with ERISA's minimum funding obligations, to insure the benefits through the federal benefit guaranty corporation, and to provide ERISA-required notices and information to participants in the Franciscan Alliance Pension Security Plan.

On April 22, 2016, the *Jewett* Plaintiffs initiated their ERISA church plan class action against Franciscan Alliance in the Northern District of Illinois represented by the law firms of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Keller Rohrback, LLP. The *Jewett* Plaintiffs served and received limited discovery requests, including the Franciscan Alliance Plan documents, which led them to file their First Amended Complaint on August 10, 2016. The *Jewett* Amended Complaint alleges twelve causes of action, including a constitutional claim based on the Establishment Clause and a claim based on allegations that Franciscan Alliance improperly required five years of service before employees would qualify as fully vested participants in the Plan. With the agreement of all parties, the Northern District of Illinois issued an order transferring *Jewett* to this Court on August 16, 2016. *Jewett* arrived in this District on September 6, 2016.

In the mean time, the *Cappello* Plaintiffs filed their church plan complaint against Franciscan Alliance in this Court on May 12, 2016, represented by the law firms of Kessler

---

[3] The Court consolidated the Jewett action (Cause No. 3:16-cv-591-TLS-MGG) into the Cappello action (Cause No. 3:16-cv-290-TLS-MGG) in its September Order. [DE 41 at 6]. No party has challenged the consolidation.

Topaz Meltzer & Check, LLP ("Kessler Topaz"), Izard, Kindall & Raabe LLP, and Sopko, Nussbaum, Inabnit & Kaczmarek. The *Cappello* complaint lacked the constitutional claim, the vesting claim, and other claims raised by the *Jewett* Plaintiffs in their Amended Complaint. The *Cappello* Plaintiffs engaged in no discovery, but filed their first motion to appoint interim lead counsel on June 24, 2016. On June 30, 2016, this Court denied the *Cappello* Plaintiffs' motion without prejudice. [[DE 25 at 1]].

On August 9, 2016, with the expectation that the *Jewett* Plaintiffs were going to agree to transfer their case to this District, the *Cappello* Plaintiffs filed their second motion to appoint interim lead counsel. The *Cappello* Plaintiffs' motion became ripe on September 2, 2016, with a timely response from Defendants and their reply brief. The *Jewett* Plaintiffs filed their competing motion for appointment of counsel on September 16, 2016. The *Jewett* motion became ripe on October 6, 2016, after the *Cappello* Plaintiffs and Defendants filed response briefs and the *Jewett* Plaintiffs filed a reply.

Briefing on both motions showed that Kessler Topaz, a *Cappello* firm, and Cohen Milstein, a *Jewett* firm, have worked together on some other church plan cases and have competed against each other for the position of lead counsel in others. The *Cappello* and *Jewett* Plaintiffs also established that on occasion, counsel's efforts to work together in other similar cases had failed even on basic tasks such as preparing a consolidated amended complaint. As such, the *Cappello* and *Jewett* Plaintiffs argued that either Cappello's counsel or Jewett's counsel should be appointed here. Defendants expressed no preference for any firm, but explicitly contended that its interests would be best served if only one firm were to be appointed. Specifically, Defendants contended that appointment of more than one firm would magnify

3

Defendants' fee exposure and would complicate Defendants' ability to coordinate effectively with opposing counsel.

The arguments at the hearing before this Court on February 24, 2017, were similar, but slightly modified from the briefing. Defendants held firm in their opposition to more than one firm serving as Interim Lead Class Counsel. The *Jewett* Plaintiffs also maintained their position that their lawyers were best suited to protect the interests of the class as a whole without any assistance from the *Cappello* Plaintiffs' counsel. Jewett's counsel reiterated their history of collaboration on "church plan" litigation including cases now before the United States Supreme Court.[4] Jewett's counsel also emphasized the challenges they have faced in the early stages of this case trying to coordinate and collaborate with the *Cappello* Plaintiffs' counsel.

The *Cappello* Plaintiffs, however, shifted their position and argued that the interests of the class would be best protected if its lawyers at Kessler Topaz were appointed Co-Interim Lead Class Counsel with the lawyers representing the *Jewett* Plaintiffs at Cohen Milstein. The *Cappello* Plaintiffs supported its modified position by noting that both Kessler Topaz and Cohen Milstein are eminently qualified firms in this type of litigation, that both firms have a history of working together, and that the firms' distinctive litigation strategies would work to the putative class members' benefit.

## II. ANALYSIS

Federal Rule of Civil Procedure 23(g) governs the appointment of class and interim class counsel in class action litigation. The designation of interim class counsel promotes more orderly and efficient prosecution of complex litigation. *See Annotated Manual for Complex*

---

[4] At the February 2017 hearing, the Court granted Defendants' oral motion to stay all proceedings in this consolidated class action because these same cases now before the United States Supreme Court could affect litigation here. [*See* DE 105].

4

*Litigation* § 10.22 (4th ed. 2011) ("*Manual*"). In determining lead counsel, the court should "conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *Id.* The most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id*. § 10.221.

Rule 23(g)(2) specifically provides that "[w]hen one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." However, in cases where "more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." *Id.* In reaching its decision,

> the court must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *Hodges v. Bon Secours Health Sys., Inc.*, No. CV RDB-16-1079, 2016 WL 4447047, at *1 (D. Md. Aug. 24, 2016) (applying Rule 23(g) selection criteria)

Here, both Cappello's and Jewett's counsel have demonstrated that they have considerable experience in handling class actions, particularly related to ERISA cases. A small

edge may go to Cohen Milstein and Keller Rohrback who have filed eighteen "church plan" complaints compared to the twelve filed by Kessler Topaz and Izard Kindall. But this edge is quite small given Kessler Topaz's strong history in ERISA and other types of class actions. In addition, Cohen Milstein and Kessler Topaz both claim uniquely qualified lawyers. While their experiences are not identical, neither counsel has persuaded the Court that any distinctions in the particular qualifications of individual lawyers at these firms will change the quality of representation the firms are able to provide to the putative class members. In addition, the firms here are admittedly big and powerful plaintiffs' firms with resources to absorb the costs of litigation no matter the outcome.

However, Jewett's counsel contend that they have a better command over the applicable law in this niche area of ERISA litigation. Jewett's counsel may have more firsthand knowledge of certain aspects of this area of law because they have been doing it since 2013, while Cappello's counsel only began "church plan" litigation in 2015. However, Cappello's counsel has had about two years to catch up and has even worked side-by-side with Jewett's counsel on other cases. As such, the Court is satisfied that Cappello's counsel has mastered the law applicable in the instant case and that they are more than sufficiently equipped to protect the interests of the putative class at a level comparable to Jewett's counsel.

Lastly, the Court must compare counsel's efforts in identifying and investigating potential claims available to this particular putative class. Arguably, Jewett's counsel has done more work in this area as evidenced by their discovery efforts and by the greater number of claims in their Amended Complaint. Cappello's counsel does not challenge these realities. Nevertheless, the Court is not convinced that these "advantages" will make a substantial difference in either counsel's ability to represent this putative class.

First, Jewett's counsel admittedly conducted limited discovery while their case was pending before the Northern District of Illinois. Indeed, they possess Franciscan Alliance's Plan documents, which are central to this case and would be produced promptly once formal discovery begins. Yet any advantage that possession of the documents may have incurred is now meaningless because Defendants agreed at the February 2017 hearing to deliver the same Plan documents to Cappello's counsel by March 27, 2017. [*See* DE 105 at 1].

Second, the narrower scope of the *Cappello* Plaintiffs' complaint actually demonstrates how Cappello's counsel would provide a benefit to the putative class members that could meaningfully complement the work of Jewett's counsel. Rule 23(g) forces this Court to keep the interests of the putative class members front and center. *See also Manual*, § 10.221. In class actions, excessive advocacy can delay resolution of the class members' legitimate claims and reduce their recovery. On the other hand, insufficient advocacy may speed up resolution of the class members' claims, but could prevent recovery on viable claims not raised.

Here, Cappello's counsel and Jewett's counsel all know the full range of potential claims and have developed somewhat different litigation strategies related to those claims with the hope of maximizing the class members' recovery and influencing ERISA law for all employees in the future. The putative class members should not be denied the full range of benefits available to them through these differing strategies. Indeed, the class members would be best served if represented by both Cappello's and Jewett's counsel. Moreover, Cappello's and Jewett's counsel would create an inherent system of check and balances to ensure a proper balancing of the issues affecting their class action.

Therefore, especially at this early stage of litigation, the Court is inclined to appoint Co-Interim Lead Class Counsel for Plaintiffs. Defendants' concerns about duplication of fees and

7

the burden of coordinating with more than one law firm can also be overcome. First, the Court sees no reason to name five law firms as co-counsel. Instead, the Court will appoint Kessler Topaz and Cohen Milstein as Co-Interim Lead Class Counsel based on the parties' representations during the hearing. Second, the appointment need not be permanent should the situation change in the course of litigation. This is especially true if Co-Counsel's billings start to get out of hand. To keep tabs on fees, the Court will order Co-Counsel to file quarterly time records. Third, Plaintiffs' counsel at the February 2017 hearing indicated a willingness to agree that one firm can represent all Plaintiffs. Therefore, the Court will order Co-Counsel to identify a single attorney to serve as point of contact with Defendants in order to eliminate the risk of burdensome coordination.

As the Court may revisit this decision at any time during the preliminary phase of this litigation and will revisit it when naming permanent lead counsel, it would behoove both Kessler Topaz and Cohen Milstein to comply fully with both the terms and the spirit of this Opinion and Order. The Court will certainly take the performance of the firms into consideration when designating permanent lead counsel.

### III. CONCLUSION

Based on its Rule 23(g) analysis, the Court **GRANTS IN PART** and **DENIES IN PART** the *Cappello* Plaintiffs' and the *Jewett* Plaintiffs' motions to appoint interim lead class counsel. [DE 26 & 65]. The Court **APPOINTS** Kessler Topaz Meltzer & Check, LLP and Cohen Milstein Sellers & Toll PLLC as Co-Interim Lead Class Counsel under the following conditions:

    (1)    Co-Counsel shall inform Defendants' counsel which single attorney will serve as their point of contact by **March 15, 2017**.

    (2)    Co-Counsel shall file time records for fees and expenses incurred in prosecution of this case on a quarterly basis. Co-Counsel's first billing report should accompany the parties' joint status report due **21 days** after the United

States Supreme Court issues its opinions in *Advocate Health Care v. Stapleton*, No. 16-74; *St. Peter's Healthcare v. Kaplan*, No. 16-86; and *Dignity Health v. Rollins*, No. 16-258. [*See* DE 105 at 1–2]. The Court expects very limited, or possibly no, billing to be generated while this case is stayed.

**SO ORDERED.**

Dated this 28th day of February 2017.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge